UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,  :
                          :
            v.            :   **MEMORANDUM & ORDER**
                          :   18-CR-192-3 (WFK)
KASSIN RIVERS,            :
                          :
            Defendant.    :
----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 3, 2021, Kassin Rivers ("Defendant") pled guilty to the sole count of a Superseding Indictment, charging him and two co-Defendants with one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served, three years of supervised release with a special condition requiring financial disclosure, and restitution in the amount of $825.00.

## BACKGROUND

On August 10, 2018, the Government filed a criminal Complaint against Defendant charging him with bank robbery in violation of 18 U.S.C. § 2113(d). On August 30, 2018, the United States filed a Superseding Indictment against Defendant and his two co-defendants, James McCloud and Rodney Griffin, charging them with one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. On September 3, 2021, Defendant pled guilty to the sole count of the Superseding Indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I. Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

    i.    Probation notes this Defendant has a least thirty eight (38) arrests in addition to this one, eight (8) felony convictions and twenty two (22) misdemeanor convictions. The prior convictions include Attempted Jostling; Petit Larceny; Attempted Possession of Stolen Property in the 3rd Degree; Possession of Stolen Property in the 1st Degree; Assault in the 3rd Degree; Robbery in the 1st Degree; Unauthorized Use of a Vehicle; Attempted Burglary; Criminal

      Possession of a Controlled Substance in the 7th Degree; and Grand Larceny in the 4th Degree.  Indeed, this Defendant has continuously committed crimes since the age of sixteen (16).  Although he has a criminal History Category of VI, that category might well underrepresent his true criminal culpability, a reality this Court is empowered to consider as an aggravating factor.  This morning, Probation amended its PSR Guidelines Calculation to agree with the Government, and now recommends incarceration for a period of between seventy (70) and (87) months.

  ii.    The Government also notes this Defendant has been arrested at least thirty-eight (38) times with eight (8) felony convictions and twenty-two (22) misdemeanor convictions.  For decades he engaged in various forms of theft, assaults, and other crimes, apparently undeterred by prison, jail, fines or the impact of his criminal conduct on innocent civilians.  The Government argues the decades long audacity of this criminal history demonstrates the need for a Guidelines sentence, which it calculates to range between seventy (70) and eighty-seven (87) months.

  iii.    The defense counsel, emphasizing the health problems of this Defendant, urges a below Guidelines sentence of time served – i.e. 43 months of imprisonment – to be followed by three (3) years of supervised release with special conditions requiring him to attend a drug treatment program.

History and Characteristics of the Defendant

Defendant was born on September 14, 1960, in Brooklyn New York to Virgil Rivers and Gennie Rivers. Presentence Investigation Report ("PSR") ¶ 74, ECF No. 153.  Before his

passing, Virgil Rivers was a retired mechanic, ship welder, ambulance orderly, and World War II veteran; Gennie Rivers, who is 104 years old, is a retired test proctor, diamond cleaner, and World War II veteran. *Id*.

Defendant advises he has twenty-three siblings, although his daughter claims the correct number of siblings is closer to fifteen. *Id*. Defendant reported having a "good" relationship with his living brothers and sisters, and a particularly close relationship with his sister, Darriel Rivers, who remains the main caretaker for their mother. *Id*.

Defendant has resided in Brooklyn, New York his entire life. *Id.* ¶ 75. Most recently, he lived with his daughter and grandchildren in Brooklyn. *Id*. Defendant described being raised by and having a "beautiful" relationship with both parents. *Id*. Defendant did not report any instances of physical or sexual abuse growing up. *Id*. ¶ 76. He was raised in a middle-income family and occasionally experienced hunger and hardship due to the size of the family. *Id*. ¶ 75. Defendant and his siblings began working by washing neighborhood cars to help pay for the cost of food and clothing. The family also received government assistance and support from a local church. *Id.*

Defendant became engaged to Caroline Williams on February 14, 1985; however, they never married. *Id*. ¶ 77. Between 1986 and 1990, Defendant was incarcerated. *Id*. During this time Ms. Williams made weekly visits to Defendant. *Id*. In 1999, Defendant was again incarcerated, leading to their breakup. *Id*. According to Defendant, since his incarceration for the instant offense, his relationship with Ms. Williams has grown, and the two speak weekly. *Id*.

In 1987, while Defendant was in custody, Ms. Williams gave birth to their only child, Nakiya Williams, who works as a Department of Education school food employee. *Id*. ¶ 78. Defendant is a grandfather to Ms. Williams' two children, Keymia Williams, age 16 and Nakai

4

Washington, age 6. *Id*. Defendant reports a "great and loving" relationship with both his granddaughter and grandson. *Id*. Ms. Williams described her father as "a caring person, he would give anyone his last item, he is very strong minded and very smart. He puts everyone before himself." *Id*. ¶ 80

SENTRY records maintained by the Bureau of Prisons (BOP) describe Defendant's time at the Metropolitan Detention Center (MDC) in Brooklyn, New York. *Id*. ¶ 81. Notably, Defendant reported being confined without an operable toilet, an issue that has since been resolved. *Id*. During his incarceration, Defendant has worked as a butcher, baker, and prep cook and in other unassigned capacities. *Id*. He has been transported to a local hospital approximately six (6) times for unknown reasons. *Id* . Defendant has been party to five (5) disciplinary infractions while at the MDC. *Id*.

**Physical Condition**

According to Defendant, he contracted COVID-19 while incarcerated at the MDC sometime within the first week of January 2022. *Id*. ¶ 83. Defendant reported receiving little treatment from MDC staff and voiced his frustration that the only medical care received was Tylenol from a visiting nurse. *Id*. Defendant suffers from a host of medical ailments, including congenital heart disease and high blood pressure. *Id*. ¶ 84. According to Defendant's daughter, Defendant has also struggled with sciatic nerve pain for many years.

**Mental and Emotional Health**

In 2017, Defendant was referred by Supplemental Security Income (SSI) personnel for a psychological examination by an unknown psychologist, who subsequently diagnosed him with post-traumatic stress disorder (PTSD). *Id*. ¶ 85. In 2005, Defendant was diagnosed by another unknown psychiatrist from Five Point Correctional Facility in Romulus, New York with PTSD

5

caused by years of incarceration. *Id*. ¶ 86. Defendant denied any instances of excessive gambling, suicidal or homicidal thoughts, attempts, or ideations. *Id*. ¶ 87.

**Substance Abuse**

Defendant reports he has never once tried alcohol, which he attributes to his time as a boxer. *Id*. ¶ 88. Defendant first smoked marijuana at the age of 17. Defendant advised he smoked "a couple of joints" at his heaviest use but that he last used marijuana 30 years ago. *Id*. ¶ 89.

Defendant first smoked heroin at the age of 32 with a fellow boxing teammate. *Id*. ¶ 90. At the point of heaviest use, Defendant would consume approximately "10 bags every other day, worth $100.00." *Id*. When asked how he was able to afford his heroin habit, Defendant stated, "I stole, I worked side jobs, built truck engines, did landscaping and construction." *Id*. Defendant lamented his substance abuse issues, explaining they "killed me. Destroyed my life. Took everything I ever had from me. It took the love from my family." *Id*. Defendant reported last using heroin the day of and after the instant offense and the day of his arrest on the instant offense. *Id*.

Defendant has attended multiple intensive inpatient treatment programs. *Id*. ¶ 91. He recalled entering a 45-day methadone inpatient program in Conifer Park, New York, a 14-day inpatient program at Beth Israel Hospital in New York, New York, a 30-day inpatient program at ACI Chemical Dependency Treatment Center in New York, New York, a 28-day inpatient methadone program at Cornerstone of Medical Arts Center in Queens, New York, a 14-day inpatient program in Richmond Hill, Staten Island, New York, and a 45-day inpatient program at an unknown drug treatment program in Manhattan, New York.

**Educational, Vocational and Special Skills**

Defendant graduated from Boys High School in Brooklyn, New York in 1974. *Id*. ¶ 92. In his youth, Defendant was a champion boxer, becoming the local welterweight champion with a record of 17 knock outs (KO's) and 13 technical knock outs (TKO's) in 32 fights. *Id*. ¶ 93. According to Defendant, he was named the 1975 Golden Glove champion. *Id*. Defendant is a skilled boxing teacher and window installer, and he has previously attended welding, HVAC, flooring, and architectural design courses while incarcerated. *Id*. ¶ 94.

**Employment Record**

Defendant most recently worked as a maintenance worker and cleaner for Andy's Cleaning Emporium in Brooklyn between 2014 and 2017. His employment ended due to the death of the business owner. According to Defendant, he did not pay state or federal income taxes on this work.

Prior to working for Andy's Cleaning Emporium, the defendant worked in construction, window installation, and roofing. According to his daughter, Defendant also worked as a security guard for a construction site.

<u>Nature and Circumstances of the Offense</u>

On December 23, 2017, Defendant and his co-Defendants robbed a Federal Deposit Insurance Corporation-insured HSBC Bank branch located in Queens, New York. After Griffin and Defendant entered the bank, Griffin proceeded to the teller station while Defendant remained at the front entrance of the bank as a lookout. Griffin grabbed an HSBC Bank customer, brandished what appeared to be a firearm at the teller, and pointed the firearm at the customer's head, stating "Give me the money or I'll shoot the customer." The teller gave Griffin $825.00, and he and Defendant left the bank. They then entered a silver Jaguar driven by McCloud. Surveillance footage revealed distinct features of the vehicle, and police officers responding to

the crime scene recovered an orange plastic bag used at the robbery with Griffin's fingerprint on it.

On January 11, 2018, law enforcement officials learned the silver Jaguar used in the bank robbery was sold for $100 to a charitable organization by McCloud. A search of Griffin's and McCloud's cellular telephones revealed they were in the vicinity of the robbery and in contact with each other throughout that day. In addition, telephone records revealed Griffin, McCloud, and Defendant were on a three-way call at the time of the robbery.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. The maximum term of imprisonment is twenty-five years. 18 U.S.C. § 2113(a) and (d). By statute, Defendant faces a maximum supervised release term of five years. 18

U.S.C. § 3583(b)(1). The maximum fine is $250,000.00, *see* 18 U.S.C. § 3571(b), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013. Pursuant to 18 U.S.C. § 3663A, restitution is owed to HSBC Bank, and as outlined in his plea agreement, Defendant consents to the entry of a forfeiture money judgment.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

Under USSG § 2B3.1, the base offense level for Defendant's offense is twenty (20). Since property of a financial institution, specifically, HSBC Bank, was taken, the offense level is increased by two (2) under USSG § 2B3.1(B)(1). Because a dangerous weapon was brandished during the robbery, three (3) levels are added per USSG § 2B3.1(B)(2)(E). This morning, Probation amended its PSR, now concluding the offense level should be reduced by two (2) levels rather than its previous calculation of four (4) levels. Probation takes this position because it now concludes the 2-level reduction is more appropriate because Defendant was aware of his role as the lookout during the bank robbery, was aware of Griffin's plan to rob the bank, and would more than likely have received a portion of the proceeds of the bank robbery. In addition, Defendant clearly demonstrated acceptance of responsibility for the offense, so the offense level is decreased by another two (2) levels. Finally, because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one (1). This results in a total offense level of twenty (20).

All parties agree Defendant has a criminal history category of VI. For a total offense level of twenty (20) and a criminal history category of VI, the guidelines imprisonment range is seventy (70) to eighty-seven (87) months of incarceration. The guidelines further suggest a term of supervised release of two (2) to five (5) years; a fine of between $15,000.00 and $150,000.00; and mandatory restitution and forfeiture under USSG §§ 5E1.1 and 5E1.4.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). The provisions of the Mandatory Victim Restitution Act of 1996 apply to Defendant's offense. Pursuant to 18 U.S.C. § 3663A, restitution is owed to HSBC Bank.

## CONCLUSION

A sentence of time served, three years of supervised release with a special condition requiring financial disclosure, and restitution in the amount of $825.00 is appropriate and

10

comports with the dictates of § 3553.  This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

       The Court expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

**s/ WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 11, 2022
      Brooklyn, New York